**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT
9                          NORTHERN DISTRICT OF CALIFORNIA
10
11   MARIO OCHOA,                              No. C-14-02385 DMR
12          Plaintiff(s),                      **ORDER GRANTING DEFENDANTS'**
                                               **MOTION TO DISMISS [DOCKET NO.**
13      v.                                     **10]**
14   CITY OF HAYWARD,
15          Defendant(s).
     _____/
16
17          Before the court is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)
18   filed by Defendants City of Hayward (the "City"), Hayward Police Chief Diane Urban, and
19   Hayward Police Officer Ryan Marion.  [Docket No. 10.]  The court finds that the matter is
20   appropriate for resolution without oral argument pursuant to Civil Local Rule 7-1(b).  For the
21   reasons stated below, the motion is **granted.**
22                                  **I.  BACKGROUND**
23   **A.  Factual Allegations[1]**
24          Plaintiff is a Latino-American man.  Compl. [Docket No. 1] at ¶ 13.  On March 12, 2013,
25   Plaintiff was walking at the intersection of Peterman and Calaroga Streets in Hayward.  Officer
26
27   _____
28          [1]  When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

**United States District Court**
For the Northern District of California

1   Marion stopped Plaintiff and ordered Plaintiff to put his hands in the air.  Plaintiff complied.

2   Plaintiff volunteered that he had a pocket knife on him.  Officer Marion then placed Plaintiff in

3   handcuffs, slammed his face into the trunk of a police car, and hyperextended Plaintiff's arms.  Five

4   more police cars arrived at the scene, and Officer Marion and other Hayward police officers

5   repeatedly punched and kicked Plaintiff all over his body and tied his legs together with a strap.

6   Compl. at ¶¶ 13-15.  Plaintiff was transported by ambulance to Kaiser Hospital.  Officers asked him

7   for his identification, then informed Plaintiff that they had mistaken his identity and arrested him in

8   error.  *Id.* at ¶¶ 17-18.  Plaintiff suffered severe and extreme pain, physical injury, and emotional

9   distress, including a broken nose, a black eye, substantial pain and swelling in his shoulder, head,

10  fact, and upper back, terror, anxiety, and loss of his sense of security and dignity.  *Id.* at ¶¶ 19-20.

11       Plaintiff brings eight causes of action against the City, Chief Urban, Officer Marion, and Doe

12  Defendants 1-25: (1) violation of 42 U.S.C. § 1983, against Officer Marion; (2) violation of 42

13  U.S.C. § 1983, against the City and Chief Urban; (3) assault and battery, against Officer Marion; (4)

14  false arrest and imprisonment, against Officer Marion; (5) intentional infliction of emotional

15  distress, against Officer Marion; (6) violation of California Civil Code § 52.1(b), against Officer

16  Marion; (7) negligence, against Officer Marion; and (8) negligent hiring, retention, training,

17  supervision, and discipline, against the City and Chief Urban.

18  **B.  Allegations Specific to Chief Urban**

19       Chief Urban is and was at all relevant times the City's Chief of Police.  She is sued both

20  individually and in her official capacity.[2]  *Id.* at ¶ 7.  Plaintiff alleges that Chief Urban "acted under

21  color of state law and in the course and scope of [her] employment by [the City]."  *Id.*

22

23

_____

24       [2]  "Personal-capacity suits seek to impose personal liability upon a government official for

25  actions he takes under color of state law.  Official-capacity suits, in contrast, generally represent only
another way of pleading an action against an entity of which an officer is an agent.  As long as the

26  government entity receives notice and an opportunity to respond, an official-capacity suit is, in all
respects other than name, to be treated as a suit against the entity.  It is *not* a suit against the official

27  personally, for the real party in interest is the entity.  Thus, while an award of damages against an
official in his personal capacity can be executed only against the official's personal assets, a plaintiff

28  seeking to recover on a damages judgment in an official-capacity suit must look to the government
entity itself. "  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (citations omitted).

United States District Court

For the Northern District of California

1    Both the Section 1983 claim and the negligent hiring claim allege that the City, "by and

2  through defendant Chief of Police Diane Urban," "had a mandatory duty of care to properly and

3  adequately hire, train, retain, supervise, and discipline its police officers and other employees so as

4  to avoid unreasonable risk of harm to citizens." *Id.* at ¶¶ 28, 51.  The City and Chief Urban

5  breached this duty of care because they "failed to adequately hire, retain, supervise, discipline, and

6  train their police officers . . . in the propose use of force; effecting proper arrests; and treating

7  citizens in a manner that is not racially discriminatory; and/or failed to have adequate policies and

8  procedures" regarding those actions. *Id.*  Plaintiff alleges that "[t]his lack of adequate supervisorial

9  training demonstrates the existence of an informal custom or policy of promoting, tolerating, and/or

10  ratifying the continuing use of excessive force; wrongful false arrests and treating citizens in a

11  racially discriminatory manner." *Id.*  According to Plaintiff, prior to March 12, 2013, the City and

12  Chief Urban "knew or should have known" that Officer Marion and Doe Defendant officers had a

13  history of use of excessive force, false arrests, and discriminatory behavior, yet failed to properly

14  train, supervise, and discipline its police officers. *Id.* at ¶¶ 29, 52.

15                                **II.  LEGAL STANDARD**

16    A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in

17  the complaint.  *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  A

18  court may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of

19  "sufficient factual matter to state a facially plausible claim to relief."  *Shroyer v. New Cingular*

20  *Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662,

21  677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted).  A

22  claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the

23  reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678

24  (citation omitted).  In other words, the facts alleged must demonstrate "more than labels and

25  conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl.*

26  *Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986));

27  *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), *overruled on other grounds by Galbraith*

28  *v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

United States District Court

For the Northern District of California

1    Federal Rule of Civil Procedure 15(a) establishes that leave to amend "shall be freely given

2    when justice so requires."  However, "[w]hen a proposed amendment would be futile, there is no

3    need to prolong the litigation by permitting further amendment."  *Gardner v. Martino*, 563 F.3d 981,

4    990 (9th Cir. 2009).

5                                     **III.  DISCUSSION**

6           Defendants argue that all claims against Chief Urban should be dismissed.  They assert that

7    because Plaintiff does not allege that Chief Urban was directly involved in the March 12, 2013

8    incident, she can only be sued in her official (rather than individual) capacity.  Defendants further

9    argue that suing Chief Urban in her official capacity is redundant because Plaintiff has already

10   named the City as a Defendant.  Finally, Defendants make a throw-away and unsupported argument

11   that the entire Complaint should also be dismissed.

12          The sum of Plaintiff's response is that "[i]n order to prove plaintiff's causes of action against

13   [the City and Chief Urban], plaintiff will need to evaluate discovery [r]esponses from said

14   defendants which relate to the relevant practices, training, and discipline by said defendants . . . .

15   [A]t this point, all facts alleged by plaintiff against said municipal defendants must be accepted as

16   true by the Court."  Opp. [Docket No. 13] at 4.

17          The court considers each challenged claim in turn.

18   **A.  Section 1983 Claim Against Chief Urban**

19          **1.  Official Capacity**

20          "There is no longer a need to bring official-capacity actions against local government

21   officials, for under *Monell* [*v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658 (1978)]. . .

22   local government units can be sued directly for damages and injunctive or declaratory relief."

23   *Kentucky v. Graham,* 473 U.S. 159, 167 n. 14 (1985).  Thus, suits against a public entity and its

24   official in his or her official capacity may be duplicative.  *See Larez v. City of Los Angeles,* 946 F.2d

25   630, 646 (9th Cir.1991) ("A suit against a governmental officer in his official capacity is equivalent

26   to a suit against the governmental entity itself."); *Monell v. Dep't of Soc. Servs. of City of New York,*

27   436 U.S. 658, 691 n. 55 (1978) ("[O]fficial-capacity suits generally represent only another way of

28   pleading an action against an entity of which an officer is an agent.").  "[I]f individuals are being

                                          4

United States District Court

For the Northern District of California

1  sued in their official capacity as municipal officials *and* the municipal entity itself is also being sued,

2  then the claims against the individuals are duplicative and should be dismissed." *Vance v. Cnty. of*

3  *Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996) (emphasis in original). *See also Hackney v.*

4  *City of Hayward*, No. 14-CV-01714-JCS, 2014 WL 2795826 (N.D. Cal. June 19, 2014) (dismissing

5  Chief Urban from action where she was sued only in her "official capacity").

6  To the extent that Plaintiff asserts the Section 1983 claim against Chief Urban in her official

7  capacity, such a claim is duplicative of Plaintiff's claim against the City and is dismissed with

8  prejudice.

9  **2. Individual Capacity**

10  Chief Urban is also sued in her individual capacity. Plaintiff does not articulate a specific

11  theory of individual liability, but appears to assert that Chief Urban is personally liable because she

12  "failed to adequately hire, retain, supervise, discipline, and train [the City's] police officers," even

13  though she knew or should have known that the officers involved in the incident "had a history of

14  engaging in acts of excessive force, effecting false arrests, and treating citizens in a racially

15  discriminatory manner." Compl. at ¶¶ 28-29.

16  While "[a] supervisor will rarely be directly and personally involved in the same way as are

17  the individual officers who are on the scene inflicting constitutional injury[,] . . . . this does not

18  prevent a supervisor from being held liable in his individual capacity." *Larez v. City of Los Angeles*,

19  946 F.2d 630, 645 (9th Cir. 1991). "Supervisory liability is imposed against a supervisory official in

20  his individual capacity for his own culpable action or inaction in the training, supervision, or control

21  of his subordinates; for his acquiescence in the constitutional deprivations of which the complaint is

22  made; or for conduct that showed a reckless or callous indifference to the rights of others." *Id.* at

23  646. *See also Blankenhorn v. City of Orange*, 485 F.3d 463, 485 (9th Cir. 2007); *Moss v. U.S.*

24  *Secret Serv.*, 675 F.3d 1213, 1231 (9th Cir. 2012), *amended,* 711 F.3d 941 (9th Cir. 2013), *rev'd sub*

25  *nom on other grounds, Wood v. Moss*, 134 S.Ct. 2056 (2014) (supervisors may not be held

26  vicariously liable under Section 1983 for the unconstitutional actions of their subordinates, but may

27  be individually liable "(1) for setting in motion a series of acts by others, or knowingly refusing to

28  terminate a series of acts by others, which they knew or reasonably should have known would cause

United States District Court
For the Northern District of California

others to inflict constitutional injury; (2) for culpable action or inaction in training, supervision, or control of subordinates; (3) for acquiescence in the constitutional deprivation by subordinates; or (4) for conduct that shows a reckless or callous indifference to the rights of others.")  (citation omitted).

"[T]o establish individual liability under 42 U.S.C. § 1983, 'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 676)).  "Even under a 'deliberate indifference' theory of individual liability, the Plaintiffs must still allege sufficient facts to plausibly establish the defendant's 'knowledge of' and 'acquiescence in' the unconstitutional conduct of his subordinates." *Id.* (quoting *Starr v. Baca*, 652 F.3d 1202, 1206-07 (9th Cir. 2011)).  "Conclusory allegations and generalities without any allegation of the specific wrong-doing by each Defendant," such as allegations of "policies, practices and customs . . . [that subject individuals] to unreasonable searches . . . and the use of unreasonable force," are insufficiently specific to support a supervisory liability claim under Section 1983. *Id.* at 942.  In contrast, a plaintiff pleads sufficient facts to plausibly show that the government official acquiesced in the unconstitutional conduct of his subordinates where the complaint contains detailed allegations about what the government official knew or should have known and did or failed to do. *Starr*, 652 F.3d at 1209 (noting that the complaint described specific letters, reports, and memoranda received by the government official and incidents about which the official was informed).

The only allegations against Chief Urban are essentially that she failed to adequately hire, retain, supervise, discipline, and train their police officers; that "[t]his lack of adequate supervisorial training demonstrates the existence of an informal custom or policy of promoting, tolerating, and/or ratifying the continuing use of excessive force; wrongful false arrests and treating citizens in a racially discriminatory manner"; and that, prior to March 12, 2013, Chief Urban "knew or should have known" that Officer Marion and Doe Defendant officers had a history of use of excessive force, false arrests, and discriminatory behavior, yet failed to properly train, supervise, and discipline its police officers.  These allegations are conclusory and not supported by sufficient factual content that would allow it to meet the pleading standard articulated in *Iqbal. Compare Starr*, 652 F.3d at 1216-17 (reversing dismissal of claim against supervisor defendant sued in his

**United States District Court**
For the Northern District of California

official capacity for attack against inmate involving prison deputies, where plaintiff made "detailed factual allegations that go well beyond reciting the elements of a claim of deliberate indifference . . . [by] specifically alleg[ing] numerous incidents in which inmates in Los Angeles County jails have been killed or injured because of the culpable actions of the subordinates of Sheriff Baca[;] . . . that Sheriff Baca was given notice of all of these incidents[;] . . . that Sheriff Baca was given notice, in several reports, of systematic problems in the county jails under his supervision that have resulted in these deaths and injuries[;] . . . that Sheriff Baca did not take action to protect inmates under his care despite the dangers, created by the actions of his subordinates, of which he had been made aware") *with Hydrick*, 669 F.3d at 941-42 (dismissing Section 1983 claim against supervisors in their individual capacities where "instead of the detailed factual allegations in *Starr* . . . Plaintiffs' complaint is based on conclusory allegations and generalities, without any allegation of the specific wrong-doing by each Defendant").

In *Mendez v. Becher*, for example, the plaintiff sued individual officers of the California Highway Patrol (Officers Montour and Anderson) as well as their supervisor (Chief Becher), for the officers' alleged use of excessive force in assisting the plaintiff with a broken car parked at the side of a road.  No. C-12-4170 EMC, Docket No. 1 (N.D. Cal. filed August 8, 2012).  The court twice dismissed the plaintiff's Section 1983 claims against Chief Becher in her individual capacity, first in the original complaint, and again upon the plaintiff's amendment of the complaint.  *See Mendez v. Becher*, No. C-12-4170 EMC, 2013 WL 449808 (N.D. Cal. Feb. 5, 2013).  In the first order, the court noted that "Plaintiff [did] not make any specific allegations about how Chief Becher's conduct resulted in his constitutional deprivation, beyond conclusory statements regarding her approving, ratifying, condoning, encouraging, or tacitly authorizing a pattern and practice of misconduct." *Id.* at *1.  The court then found that the "amended complaint . . . failed to remedy the deficiencies of his previous complaint, instead simply repackaging conclusory allegations against Chief Becher." *Id.* at *2.  The plaintiff raised new facts including "(1) that Officer Montour and Officer Anderson's misconduct was so egregious that it could only have occurred in an atmosphere where such acts are not admonished, (2) that Chief Becher, through the routine administration of her duties as chief, reviewed or was required to review Plaintiff's citizen complaint, her department's response, and the

**United States District Court**

For the Northern District of California

1    attendant incident report of the relevant incident and failed to admonish or discipline Officer

2    Montour or Officer Anderson, thereby ratifying and condoning their misconduct, and (3) that

3    discovery will reveal instances of similar conduct left unchecked."  *Id.*  These new facts were still

4    "insufficient to state a claim against Chief Becher . . . . [because] for one, the first new claim makes

5    no allegations as to Chief Becher's specific wrong-doing, as required.  Second, as mentioned in the

6    Court's earlier order, '[p]ost-facto ratification of a singular instance of wrongdoing against the

7    Plaintiff may not satisfy the causation requirement.'  . . . . Lastly, speculation that discovery may

8    turn over facts suggesting deliberate indifference does not suffice, as Plaintiff 'must still allege

9    sufficient facts to plausibly establish [Chief Becher's] knowledge of and acquiescence in the

10   unconstitutional conduct of [her] subordinates.'" *Id.* (quoting *Hydrick,* 669 F.3d at 942 (quotation

11   marks and citation omitted)).

12       Here, there are no specific allegations that Officer Marion or any Doe Defendant officers had

13   a history of use of excessive force, false arrests, or discriminatory behavior, so as to support the

14   allegation that Chief Urban knew of this alleged history.  *See Parrish v. Solis*, No. C 11-1438 LHK

15   PR, 2012 WL 3902689 at *5 (N.D. Cal. Aug. 28, 2012) (granting summary judgment on individual

16   capacity claims against supervisor defendants where "Plaintiff does not allege any specific past

17   incidents of the use of excessive force by subordinates of [the supervisor defendants]. Neither does

18   Plaintiff allege any specific incident during which [the supervisor defendants] was given notice of a

19   subordinate's unconstitutional conduct. Plaintiff's allegations are generally conclusory recitals").

20   Nor has Plaintiff alleged that any specific policy implemented by Chief Urban leading to Officer

21   Marion and the Doe Defendants' alleged use of excessive force or alleged discriminatory behavior.

22   *See Hydrick*, 669 F.3d 942 ("Plaintiff's Fourth Amendment claim alleges that Defendants' 'policies,

23   practices, and customs subject [Plaintiff] to unreasonable searches . . . . [b]ut there is no allegation of

24   a *specific* policy implemented by the Defendants or a *specific* event or events instigated by the

25   Defendants that led to these purportedly unconstitutional searches").

26       Accordingly, the Section 1983 claims against Chief Urban in her individual capacity is

27   **dismissed**.  Plaintiff may amend his complaint to restate this claim only to the extent that he is able

28

1  to allege additional facts specifically connecting Chief Urban to the incidents described in the

2  complaint.

3  **B.  Negligent Hiring, Retention, Training, Supervision, and Discipline Claim**

4          Defendants first argue that the negligent hiring claim against Chief Urban should be

5  dismissed because "tort claims brought against city officials in their official capacities is equivalent

6  to an action against the city itself" and must be dismissed as duplicative of the claim against the

7  City.  However, the only case that Defendants cite for this proposition is *Robinson v. D.C.*, 403 F.

8  Supp. 2d 39, 49 (D.D.C. 2005), a case that considers the supervisory liability of a government

9  official in his or her official capacity in the context of a Section 1983 claim, not a state law claim.

10  Defendants offer no authority to support their argument that a city and its official may not be sued in

11  the same suit for negligence or negligent hiring.

12          Defendants' second argument is that the Complaint "presents no facts that can even slightly

13  glean [sic] any negligence committed by Chief Urban."  Motion at 5.  The court construes this

14  sentence as an assertion that the Complaint fails to allege the required elements of a claim for

15  negligent hiring, retention, training, supervision, and discipline against Chief Urban.  Defendants do

16  not recite the elements of a claim for negligent hiring, let alone analyze how the Complaint fails to

17  state those elements.   "An employer may be liable to a third person for the employer's negligence in

18  hiring or retaining an employee who is incompetent or unfit."  *Phillips v. TLC Plumbing, Inc.*, 172

19  Cal. App. 4th 1133, 1139 (2009) (citation omitted).  "Negligence liability will be imposed on an

20  employer if it knew or should have known that hiring the employee created a particular risk or

21  hazard and that particular harm materializes."  *Id.* (citations omitted).  Liability for negligence in

22  selecting, training, retaining, supervising, or otherwise controlling the agent "is one of direct liability

23  for negligence, not vicarious liability."  *Id.*  Thus, "liability under this rule is limited by basic

24  principles of tort law, including requirements of causation and duty."  *Id.* at 1140.  "Even if other

25  elements of the tort action were established . . . an employee who did not actually make the hiring or

26  retention decision and whose recommendations were not, in the particular circumstances of the

27  organization, likely to be highly influential to the decision maker would not face the potential for

28  individual liability."  *C.A. v. William S. Hart Union High Sch. Dist.*, 53 Cal.4th 861, 876 (2012).

United States District Court
For the Northern District of California

1    The Complaint fails to allege facts supporting the causation element of a negligence claim,

2    including whether Chief Urban was actually involved in the hiring or retention decisions at issue.

3    The negligent hiring claim is therefore **dismissed** with leave to amend.[3]

4    **C. Remainder of the Complaint**

5    Defendants argue that it is "appropriate for the Court to dismiss the Complaint in its entirety,

6    and not just merely strike Chief Urban from the Complaint.  In order to effectively litigate this issue,

7    the City needs clarity as to any facts regarding Chief Urban's involvement with the incident in

8    question.  Any fact could affect the posture of all named defendants, not merely Chief Urban, which

9    could theoretically require the City to completely restructure its defense if any such facts are brought

10   to light."  This argument is nonsensical as well as unsupported.

**IV.  CONCLUSION**

12   For the foregoing reasons, the Section 1983 claim against Chief Urban in her individual

13   capacity and the negligent hiring claim against Chief Urban are **dismissed with leave to amend**.

14   The Section 1983 claim against Chief Urban in her official capacity is **dismissed without leave to**

15   **amend.**

18   IT IS SO ORDERED.

19   Dated:  August 19, 2014



Donna M. Ryu
United States Magistrate Judge

27

28   _____

[3] Because the court determines that the Complaint fails to allege the causation element of this claim, it declines to consider whether the Complaint sufficiently alleges the duty element.